UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MANUELA B. H.,[1]
(A-Number: 240-283-892)

          Petitioner,

   v.

CHRISTOPHER CHESTNUT, et al.,

          Respondents.

No. 1:26-cv-01299-KES-SKO (HC)

**FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

**[10-DAY OBJECTION DEADLINE]**

Petitioner Manuela B. H. is a native and citizen of Colombia who entered the United States without inspection in or about March 2022. (Doc. 1 at 4.) She was apprehended by Immigration and Customs Enforcement ("ICE") shortly after crossing the border. (Doc. 1 at 4.) On April 2, 2022, she was released into the United States on an Order of Release on Recognizance ("OREC"). From April 2, 2022, until her re-detention on December 29, 2025, Petitioner complied with all check-in requirements and all ankle and wrist monitoring requirements. (Doc. 1 at 4.)

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

On December 14, 2025, Petitioner states she was performing household cleaning duties and attempted to lift a heavy bed frame to clean underneath it. (Doc. 1 at 4.) Her wrist monitor became ensnared in the bed frame. (Doc. 1 at 4.) Because the frame was too heavy to lift further and the monitor was caught, the band was forcibly ripped. (Doc. 1 at 4.) The very next day, Petitioner and her sponsor traveled to the ICE reporting office to turn in and replace the damaged wrist monitoring device. (Doc. 1 at 5.) One staff member reviewing the device believed the damage was intentional, while a second staff member observed that the break was jagged and crooked rather than straight and precise as one would expect from an intentional cut. (Doc. 1 at 5.) Petitioner was issued a replacement monitor and allowed to return home after she was enrolled in an Alternatives to Detention ("ATD") program. (Doc. 1 at 5.)

Two weeks later on December 28, 2025, Petitioner was contacted and told to report to the ICE office the following day to have the monitor removed and replaced with a phone-based monitoring application. (Doc. 1 at 5.) Petitioner reported as directed the next day, but rather than receiving the promised telephonic monitoring app, she was pinned against a wall, arrested, and charged with "Destruction of Federal Property." (Doc. 1 at 5.) Petitioner was detained and has remained in custody at the California City ICE Processing Center since then. (Doc. 1 at 5.)

On February 13, 2026, Petitioner filed the instant habeas petition challenging her re-detention. (Doc. 1.) On March 19, 2026, Respondents filed a response to the petition. (Doc. 7.) On April 7, 2026, Petitioner filed a reply. (Doc. 8.)

## I.      JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## II.    DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Petitioner contends that Respondents have violated her substantive and procedural due process rights in re-detaining her arbitrarily, capriciously, and without opportunity to respond to charges. (Doc. 1 at 7-8.)

As the basis for Petitioner's detention, Respondents contend that Petitioner's recent re-detention is authorized by statute. Respondents claim that Petitioner's release pursuant to OREC can be revoked at any time, for any reason. (Doc. 7 at 1.) Respondents further point to Petitioner's wrist monitoring device tear as a reason for revoking release, but acknowledge that Petitioner's parole is discretionary and governed by 8 U.S.C. § 1226(a). (Doc. 7 at 1-2.)

The Court next turns to the analysis of Petitioner's due process claim.  Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

### A.  Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (due process requires pre-deprivation hearing before revocation of pre-parole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by

3

Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' April 2, 2022, release of Petitioner on parole was similar, in that it allowed her to live in the country outside of custody for three-and-a-half years. And that time inherently allowed Petitioner to form "enduring attachments of normal life." Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in her release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

///

///

///

///

4

### B. The <u>Mathews</u> Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Bond Hearing

Due process "is a flexible concept that varies with the particular situation." <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation may be evaluated using the <u>Mathews v. Eldridge</u> factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Id</u>. (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)); <u>see</u> <u>Hernandez v. Sessions</u>, 872 F.3d 976, 993 (9th Cir. 2017) (applying <u>Mathews</u> factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention.  "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for three-and-a-half years, and during that time, she has lived, worked, and developed ties in the community. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." <u>A.E. v. Andrews</u>, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community.  <u>See</u> <u>Zadvydas</u>, 533 U.S. at 690; <u>Padilla</u>, 704 F. Supp. 3d at 1172.  Petitioner has no criminal history.  Petitioner has also faithfully abided by the requirements of her release on supervision, including attending all check-ins and wearing monitors. Respondents do not dispute that Petitioner reported to all required check-ins, but contend that Petitioner's wrist monitor was intentionally cut, and therefore, a bond hearing should be held instead of release. The Court is not persuaded.

Petitioner's reason for the tear is consistent with the damage caused to the device. She immediately reported the tear by personally traveling to the ICE office the next day and turning the device in for review and replacement. This is not indicative of intentional destruction of the device, or a risk of danger or flight on Petitioner's part. If Respondents sincerely believed the wrist device was intentionally cut, they would not have replaced the monitor and released her to return home. Given the absence of any procedural safeguards to determine if her detention was justified, the risk of erroneous deprivation of liberty is high. A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  Doe, 2025 WL 691664, at *6.  "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."  Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors establish that before Respondents could lawfully re-detain Petitioner, she was entitled to a bond hearing. "'[T]he root requirement' of the Due Process Clause" is "that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see Zinermon, 494 U.S. at 127 ("[a]pplying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty").  And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence.  See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL

1676854, at *2 (N.D. Cal. June 14, 2025) (same); <u>Romero v. Kaiser</u>, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); <u>Vargas v. Jennings</u>, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, Petitioner's detention is in violation of the Due Process Clause of the Fifth Amendment.

**III.    CONCLUSION & RECOMMENDATION**

Based on the foregoing, the Court concludes that Respondents violated Petitioner's due process rights by re-detaining Petitioner without first having conducted a pre-deprivation hearing before a neutral arbiter where the Government established that Petitioner was a flight risk or danger to the community such that her physical custody was legally justified. Respondents further violated Petitioner's due process rights by re-detaining Petitioner without providing her proper notice and opportunity to respond. For the foregoing reasons, the Court hereby RECOMMENDS:

1) The petition for writ of habeas corpus be GRANTED;

2) Petitioner be RELEASED from detention; and

3) Respondents be ENJOINED and RESTRAINED from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a flight risk or danger to the community.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. <u>Id</u>. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when

reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **April 22, 2026**                          /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE